UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:03-cr-00062-SEB-DML |
| | ) | |
| JEFFREY GARRETT, | ) | -01 |
| | ) | |
| Defendant. | ) | |

**ORDER**

Defendant Jeffrey Garrett, represented by counsel, moves under § 404(b) of the First Step Act of 2018 for a reduction of his sentence from 360 months to 180 months, which if granted would result in his immediate release, as well as a reduction in his supervised release from 10 to 8 years. For the reasons detailed below, the motion [Dkt. 51] is GRANTED IN PART. Defendant's *pro se* motion for sentence reduction [Dkt. 34] is DENIED AS MOOT.

**Background**

On April 15, 2003, Mr. Garrett was charged by indictment with possession with intent to distribute "50 grams or more" of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(iii) (Count One) and unlawful possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1) (Count Two). The government filed two prior felony informations with the court under 21 U.S.C. § 851 on May 21, 2003 and April 19, 2004, respectively.

1

On June 2, 2014, a jury found Defendant guilty of both Counts One and Two. Prior to sentencing, the United States Probation Office prepared a presentence investigation report, calculating Mr. Garrett's initial offense level as 34 based on the drug amount, specifically, 315.35 grams of cocaine base. Because Mr. Garrett was determined to be a career offender under the United States Sentencing Guidelines in effect at the time, the offense level was increased to 37 and his criminal history category was set at level VI. *See* U.S.S.G. § 4B1.1(b). Based on a total offense level of 37 and a criminal history category of VI, the Sentencing Guidelines reflected a sentence range of 360 months to life. The conviction on Count One subjected him to a statutory mandatory minimum life sentence based upon the § 851 enhancement.

On November 3, 2004, Mr. Garrett was sentenced on Count One to life imprisonment with an additional ten years on supervised release and a mandatory consecutive sentence of 60 months on Count Two. On January 18, 2017, Mr. Garrett's sentence was commuted by President Obama to a total of 360 months.

On March 27, 2017, Mr. Garrett filed a *pro se* motion seeking a reduction of his sentence under 18 U.S.C. § 3582(c)(2). On June 4, 2019, Mr. Garrett, by counsel, filed the instant motion for a reduced sentence under 404(b) of the First Step Act of 2018, seeking a drop from the 360 months to 180 months. He also seeks a reduction in his supervised release from 10 to 8 years. He has at this point served a total of approximately 192 months.

<u>**Legal Analysis**</u>

I.    **Applicable Law**

In 2010, Congress enacted the Fair Sentencing Act of 2010, Pub. L. 111-220, 124 Stat. 2372 (2010), to address sentencing disparities between cocaine base (crack) offenses and powder cocaine offenses resulting from irrational and "unjustified race-based differences" in federal sentencing between those types of cases. *Dorsey v. United States*, 567 U.S. 260, 268–69 (2012). As relevant here, section 2 of the Fair Sentencing Act reduced the penalties for offenses involving cocaine base by increasing the threshold drug quantities required to trigger mandatory minimum sentences under 21 U.S.C. § 841(b).

For example, prior to the enactment of the Fair Sentencing Act, 21 U.S.C. § 841(b)(1)(A)(iii), under which Mr. Garret was sentenced, provided for a sentencing range of 10 years to life, if the offense involved "50 grams or more" of cocaine base with possible enhancement to 20 years to life if there was a prior felony drug conviction, or mandatory life if there were two prior felony drug convictions. Under current law, to fall within this sentencing range, the offense must involve "280 grams or more" of cocaine base. § 841(b)(1)(A)(iii) (2011). For offenses involving "28 grams or more," but less than 280 grams of cocaine base, 21 U.S.C. § 841(b)(1)(B)(iii) provides for a sentencing range of 5 to 40 years, with a possible enhancement to 10 years to life where there has been a prior felony drug conviction. Again, as relevant here, before enactment of the Fair Sentencing Act, a career offender such as Mr. Garrett, who was convicted of possessing more than 50 grams of cocaine base, faced a mandatory minimum sentence of life imprisonment. With the new statute, when a career offender is convicted of possessing between 28 and 280 grams of cocaine base, the mandatory minimum sentence is 10 years.

3

In 2018, Congress enacted the First Step Act making the Fair Sentencing Act's cocaine base sentencing ranges retroactively applicable to those convicted of qualifying crimes prior to 2010. Under the First Step Act, "[a] court that imposed a sentence for a covered offense may … impose a sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 … were in effect at the time the covered offense was committed." Pub. L. 115-391, 132 Stat. 5194, § 404(b) (2018). A "covered offense" is one whose penalties were modified by the Fair Sentencing Act but was committed prior to August 3, 2010. *Id.* § 404(a). Congress also imposed the following two limitations on relief, neither of which applies here; relief is not available (1) if the defendant's sentence was already imposed or reduced under the Fair Sentencing Act; and (2) if a court has already rejected the defendant's motion under the First Step Act. *Id.* § 404(c).

## II. Discussion

In response to Defendant's motion, the government first argues that Mr. Garrett is not eligible for a sentence reduction under § 404 of the First Step Act because his sentence was commuted by President Obama, which means that he is "no longer serving a sentence mandated by statutory penalties that were modified by the Fair Sentencing Act, but rather a reduced sentence substituted by the President." Dkt. 53 at 6. The government acknowledges, however, that a clear majority of district courts who have considered this issue have determined that a presidential commutation does not render a defendant ineligible for § 404 relief, chiefly because "the commutation shorten[s] an existing sentence, it [does] not impose a new sentence that would place it outside the reach of the First Step Act." *United States v. Dodd*, 372 F. Supp. 3d 795, 798–99 (S.D.

4

Iowa 2019) (internal quotation marks and citation omitted); *accord United States v. Razz*, ___ F. Supp. 3d ___, 2019 WL 2204068, at *7 (S.D. Fla. May 22, 2019); *United States v. Biggs*, No. 05 CR 316, 2019 WL 2120226, at *1–2 (N.D. Ill. May 15, 2019); *United States v. Pugh*, No. 5:95 CR 145, 2019 WL 1331684, at *2–3 (N.D. Ohio Mar. 25, 2019); *United States v. Walker*, No. 1:94-CR-5, 2019 WL 1226856, at *2 (N.D. Ohio Mar. 15, 2019). Holding otherwise, to wit, "that a presidentially-commuted sentence constitutes a new, 'presidentially-imposed' sentence," would violate the separation of powers doctrine. *Razz*, 2019 WL 2204068 at *7; *accord Pugh*, 2019 WL 1331684, at *2 ("[T]he Constitution vests legislative powers in Congress, judicial powers in the courts, and the execution of laws in the president. While the president has the power to 'grant Reprieves and Pardons for Offenses against the United States,' this is not the power to 'impose a sentence' or vacate a court's judgment.") (citing *Nixon v. United States*, 506 U.S. 224, 232 (1993)).

This conclusion is buttressed by the plain language of the First Step Act which exempts those who previously obtained relief under the Fair Sentencing Act but not those who obtained any other form of relief, such as executive clemency. Given that Congress would have been aware when the First Step Act was enacted that President Obama had commuted thousands of crack cocaine sentences in 2016 and 2017, it could have written such an exemption into the statute but chose not to do so. *See Biggs*, 2019 WL 2120226, at *2; *Pugh*, 2019 WL 1331684, at *2.

We agree with the reasoning set forth in the majority of district court opinions and find the government's arguments here to the contrary unpersuasive. Therefore, we hold

5

that the presidential commutation has not rendered Mr. Garrett ineligible for First Step relief here.

The government next contends that Mr. Garrett is ineligible for a sentence reduction under § 404 because, as a career offender, the retroactive application of the Fair Sentencing Act does not lower his applicable guideline range; rather, it remains set at 360 months to life imprisonment. We do not share this conclusion. The fact that Mr. Garrett's guideline range remains unchanged does not foreclose a reduction of his sentence, at least not where he was sentenced to the mandatory minimum and the mandatory minimum sentence was thereafter reduced by section 2 of the Fair Sentencing Act. *See United States v. Bean*, No. 1:09-cr-143, 2019 WL 2537435, at *5–6 (W.D. Mich. June 20, 2019). The government has presented no developed argument on this point beyond its string cite to what appear to be largely distinguishable cases; there has been no accompanying analysis. If Congress had intended to limit eligibility under § 404 only to cases in which the guideline range had been lowered, again, it could have said so, but the First Step Act contains no such limiting language and we shall not read such a limitation into the statute.

Having found that Mr. Garrett is eligible for sentencing relief, we turn next to address what relief to award. The First Step Act provides: "A court that imposed a sentence for a covered offense may … impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 … were in effect at the time the covered offense was committed." Pub. L. 115-391, 132 Stat. 5194, § 404(b) (2018). In deciding whether to reduce a sentence under § 404, the court "look[s] at the factors set out in [18 U.S.C.]

Section 3553(a), the revised statutory range under the Fair Sentencing Act, any amendments to the guideline range, and post-sentencing conduct." *Bean*, 2019 WL 2537435, at *4 (citing *United States v. Jones*, No. 2:05-CR-29-FL-1, 2019 WL 2480113, at *2 (E.D.N.C. June 11, 2019)).

Mr. Garrett has served a total of 192 months on his sentence. If he were sentenced today on the same charges, he would be subject to a statutory mandatory minimum sentence of 180 months (120 months mandatory minimum sentence on Count One plus a mandatory consecutive sentence of 60 months on Count Two)[1] and a guideline sentencing range of 360 months to life. As the government points out and Mr. Garrett concedes, his guideline range has not been reduced and his existing commuted sentence of 360 months is below the guideline range, considering that no allowance was made for

---

[1] The government argues that, had Mr. Garrett been charged after the passage of the Fair Sentencing Act, he would have been charged with the drug quantity for which he was found responsible in the PSR, to wit, 315.35 grams. Because this amount is over the 280-gram threshold, the government asserts that it would still have proceeded against Mr. Garrett under § 841(b)(1)(A)(iii), thus making him subject not to a 10-year mandatory minimum, but a 25-year mandatory minimum, plus the mandatory 60-month consecutive sentence. In line with other district court decisions addressing this issue, we decline to assume, as the government conjectures, that Mr. Garrett would have been charged and pleaded guilty or been found guilty at trial of possession with the intent to distribute more than 280 grams of cocaine base. This assertion is simply too speculative. *See, e.g.*, *Dodd*, 372 F. Supp. 3d at 799 ("Many things may have been different if this crime had been committed and charged years later or the Fair Sentencing Act had been passed years earlier, and the Court is unwilling to engage in a series of hypotheticals about what might have happened had aspects of the case been fundamentally altered); *United States v. Welch*, No. 7:10-CR-0054-008, 2019 WL 2092580, *4 (W.D. Va. May 13, 2019) ("While it is possible that the government would have proceeded against [the defendant] under … § 841(b)(1)(A), it also is possible that it would not have chosen to do so. … Thus, this court declines to assume that [the defendant] would have been charged and convicted of possessing more than 280 grams of cocaine base if the Fair Sentencing Act had been in effect at the time he was convicted."). The offense of which Mr. Garrett was convicted, which was modified by the Fair Sentencing Act, was possession with intent to distribute 50 grams or more of cocaine base; accordingly, our analysis is necessarily based on that offense.

7

the 60-month mandatory consecutive sentence. Several important sentencing considerations *have* changed, however.[2] Most significantly, the mandatory minimum sentence to which Mr. Garrett was subject has been reduced from life to ten years, reflecting "Congress's judgment that shorter prison sentences adequately reflect the seriousness of crack cocaine offenses …." *Biggs*, 2019 WL 2120226, at *4. When Mr. Garrett was originally sentenced, we lacked discretion to reduce the mandatory minimum; thus we sentenced him to the only legally permissible term of imprisonment: life, plus 60 months consecutive. Under the First Step Act, the Court may "exercise the full range of its discretion consistent with the Section 3553(a) factors." *Bean*, 2019 WL 2537435, at *6. These factors, along with Mr. Garrett's post-sentencing conduct in our judgment warrant a further reduction in his sentence as explained below.

When he was sentenced, Mr. Garrett was in his early 30s. He had suffered from drug addiction since his early teens. Clearly, his dependency on drugs, specifically cocaine, was a major contributing factor in the commission of his criminal offenses. Despite facing a life sentence, Mr. Garrett has diligently addressed his addiction issues by participating in various prison-based programs in an effort to maintain his sobriety should he be released. On May 2, 2019, he completed a Non-Residential Drug Abuse Program ("RDAP"), the most rigorous and challenging of all the Bureau of Prisons programs

---

[2] Although not affecting Mr. Garrett's Criminal History Category due to his Career Offender status, we note that Mr. Garrett's prior conviction for Resisting Law Enforcement is no longer considered a "crime of violence," and, in 2011, the United States Sentencing Commission removed the "recency enhancement" under USSG § 4A1.1(e) finding that it was not a strong predictor of recidivism.

8

aimed at overcoming drug addiction. Mr. Garrett has also participated in numerous educational courses, including wellness programs such as the eighteen-month Life Connections Program which he completed in December 2008. That program included 50 hours of community service and more than 431 hours of character-building courses as well as classes focused on achieving cognitive, vocational, and interpersonal skills. He has accumulated many certificates of completion for other courses such as violence prevention and recovery maintenance. He also has completed his GED and various other academic courses.

As we articulated during Mr. Garrett's initial sentencing hearing, the Court was greatly concerned about his significant prior criminal history and thus the high likelihood of his recidivism. The government emphasizes in responding to the pending sentence reduction motion, and we, of course, acknowledge, that Mr. Garrett's violent history remains a source of concern. But, as the government concedes, despite Mr. Garrett's having been in possession of a loaded firearm at the time of his arrest for these offenses, the crimes he committed did not involve violence.

During his incarceration, Mr. Garrett has shown both that he is capable of rehabilitation and that he is dedicated to doing so. Throughout the sixteen years of his incarceration, he has incurred only two negative incident reports, both of which were for minor offenses occurring more than ten years ago. Mr. Garrett recently turned fifty years of age, a time at which the United States Sentencing Commission opines that the likelihood of recidivism substantially declines. *See* Kim Steven Hunt & Billy Easley II, U.S. Sentencing Comm'n, *The Effects of Aging on Recidivism Among Federal Offenders*,

9

22 (2017), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf.

Faced with a life sentence, Mr. Garrett could have given up on himself and on the prospect of any meaningful rehabilitation efforts. Instead, he has shown commendable diligence and noteworthy success. Taking into account the § 3553(a) factors, we conclude that a further reduction of his sentence is warranted. Accordingly, the Court shall reduce Mr. Garrett's sentence to a total of 240 months, calculated as follows: 180 months on Count One, plus 60 months consecutive on Count Two, minus an additional 24 months to acknowledge his significant success in post-conviction rehabilitation. The total sentence of 216 months (156 months on Count One plus 60 consecutive months on Count Two) shall therefore be imposed in an Amended Judgment and Commitment Order. This sentence is sufficient but not greater than necessary to accomplish the sentencing goals in § 3553(a), taking into account the recent changes in the sentencing statutes. Mr. Garrett's request to reduce his period of supervised release from 10 to 8 years is also granted.

### III. Conclusion

Mr. Garrett's motion for sentence reduction under § 404 of the First Step Act [Dkt. 51] is <u>GRANTED IN PART</u> and his *pro se* motion for reduction under 18 U.S.C. § 3582(c)(2) [Dkt. 34] is <u>DENIED AS MOOT</u>. Mr. Garrett's aggregate sentence is hereby reduced from 360 to 216 months (156 months on Count One and 60 months consecutive

on Count Two) with a period of supervised release of 8 years.[3]  All other terms and conditions of the previous judgment imposed on November 3, 2004 remain in effect.  An amended Judgment and Commitment Order shall be entered simultaneously to this order.

    IT IS SO ORDERED.

Date: ___6/25/2019___         *Sarah Evans Barker*

                                        SARAH EVANS BARKER, JUDGE
                                        United States District Court
                                        Southern District of Indiana

Distribution:

Barry D. Glickman
UNITED STATES ATTORNEY'S OFFICE
barry.glickman@usdoj.gov

Sara Varner
INDIANA FEDERAL COMMUNITY DEFENDERS
sara.varner@fd.org

James Robert Wood
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
bob.wood@usdoj.gov

---

[3] By our calculations, since Mr. Garrett has already served a total of 192 months, he has 24 months yet to serve on his reduced 216-month sentence.